**In re COLONIAL REALTY COMPANY, Jonathan Googel, Benjamin Sisti, Consolidated Debtors.**

**Hal M. HIRSCH, Trustee, Plaintiff,**

**v.**

**Michael MARINELLI, Defendant.**

**Bankruptcy No. 2–90–01980.
Adv. No. 2–93–6283.**

United States Bankruptcy Court,
D. Connecticut.

May 18, 1994.

Hal M. Hirsch, Trustee, Gainsburg & Hirsch, Hartford, CT, for plaintiff.

Linda Clough, Weber and Marshall, New Britain, CT, for defendant.

Leah Cohen Chatinover, East Hartford, CT, for F.D.I.C.

## RULING AND ORDER ON DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

### ISSUE

Hal M. Hirsch, the Chapter 7 trustee of the consolidated estate of Colonial Realty Company, Jonathan Googel, and Benjamin Sisti (the debtors), filed a complaint on July 12, 1993 against Michael Marinelli, the defendant. On November 15, 1993, the trustee filed an amended complaint containing four counts. The defendant moves to dismiss the amended complaint, contending that the cause of action in Count I is time barred, and that the trustee lacks standing to bring the causes of action asserted in Counts II and III. For the reasons below, the court grants the defendant's motion as to Counts II and III of the amended complaint and denies the motion as to Counts I and IV.

## II.

### BACKGROUND

The debtors' Chapter 7 cases were commenced on September 14, 1990 with the filing of involuntary petitions. The trustee, utilizing Code § 544(b),[1] seeks the return of a $43,951.85 transfer (the transfer) made to the defendant by one of the debtors on May 12, 1987, three years and four months prior to the commencement of the cases.[2] The amended complaint details a so-labeled "Ponzi Scheme" engineered by the debtors whereby they sold units in successive real estate limited partnerships to investors who were given false information. These sales generated income to the debtors to fund cash needs of prior such partnerships. The debtors paid finder's fees to persons who induced investors to purchase the limited partnership units. The complaint alleges that the monies paid to the defendant for finder's fees were illegal under federal and state securities laws, and that the debtors were not authorized to pay and the defendant was not authorized to receive such fees.

In Count I the trustee asserts the transfer, pursuant to Conn.Gen.Stat. § 52–552 (repealed 1991),[3] constituted a fraudulent conveyance as made with "actual intent to avoid any debt or duty," without any "substantial consideration to the debtors," and made while the debtors were insolvent or were rendered insolvent as a result of the transfer. Amended Complaint ¶¶ 71–74. Count II adds 12 U.S.C. § 1821(d)(17) as an alternate basis for recovery. Count III asserts a third basis for return of the transfer on a theory of unjust enrichment. Count IV seeks to have any judgment rendered on any of the first three counts constitute a basis to disallow, pursuant to Code § 502(d),[4] any claim the defendant may have filed against the debtors' consolidated estate.

## III.

### DISCUSSION

#### A.

■ The defendant argues that Count I should be dismissed because the transfer took place more than three years before the commencement of the debtors' cases. A bankruptcy trustee asserting a cause of action on behalf of creditors under § 544(b) may only assert those causes of action that could have been timely commenced by an unsecured creditor under applicable law as of the commencement of the case. *See, e.g., Mancuso v. Continental Bank N.A. Chicago (In re Topcor, Inc.),* 132 B.R. 119, 124 (Bankr.N.D.Tex.1991) ("[A]s long as the state law statute of limitations period has not expired prior to the debtor's filing for bankruptcy, the trustee may bring an avoidance action under § 544(b) within two years of his appointment."); 4 *Collier on Bankruptcy* ¶ 544.03[2], at 544–21 (Lawrence P. King, ed., 15th ed. 1994) ("[I]f the creditor ... is barred from recovery because of the running of a statute of limitations *prior to the commencement of the case,* the trustee is likewise rendered impotent.").

■ Connecticut, recently repealed § 52–552, and replaced it with the Uniform Fraudulent Transfer Act (UFTA), effective October 1, 1991. Section 52–552 did not indicate what limitation period, if any, applied to actions under its provisions. Relying principally on

---

**1.** Section 544(b) provides that a
> trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is avoidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b).

**2.** The court finds it unnecessary to discuss the trustee's reliance on § 544(a) in view of its determinations herein.

**3.** Section 52–552 provided:

> All fraudulent conveyances, suits, judgments, executions or contracts, made or contrived with intent to avoid any debt or duty belonging to others, shall, notwithstanding any pretended consideration therefor, be void as against those persons only, their heirs, executors, administrators or assigns, to whom such debt or duly belongs.

Conn.Gen.Stat. § 52–552 (repealed 1991).

**4.** Section 502(d) authorizes the court to disallow any claim of an entity that is a transferee of an avoided transfer unless the entity has returned the avoided transfer.

*Einbinder & Young, P.C. v. Soiltesting, Inc.,* 36 Conn.Supp. 277, 279, 418 A.2d 95 (1980), the defendant argues that the three-year statute of limitations for tort actions, Conn. Gen.Stat. § 52–577,[5] applies to fraudulent conveyance actions under § 52–552. *Einbinder* did not decide that the three-year limitation period of § 52–577 applied to fraudulent conveyance actions under § 52–552. The *Einbinder* court noted that

> Connecticut has no express period of limitation applicable to fraudulent conveyances, and it is unclear whether any statute of limitations applies to actions to set aside such conveyances. It is unnecessary, however, for the court to reach this issue.
>
> .... Neither party disputes the fact that *if any* statute of limitations is to apply it is the three year period provided for in [§ 52–577].

36 Conn.Supp. at 279–80, 418 A.2d 95 (citations omitted) (emphasis added). The *Einbinder* court then concluded that the borrowed limitation period of § 52–577 would commence only after a "creditor's claim is reduced to judgment...." *Id.* at 280, 418 A.2d 95.

The Connecticut Supreme Court, in *Travelers Indemnity Co. v. Rubin,* 209 Conn. 437, 551 A.2d 1220 (1988), has since called the *Einbinder* holding into question. In a suit to set aside a fraudulent conveyance of real estate based on a common law (rather than § 52–552) cause of action, the *Travelers* court stated, "We can discern no rational reason why a party knowing of a debtor's fraudulent conveyance should not be required to join an action to set aside the fraudulent conveyance with the underlying action against the debtor for damages." *Id.* at 444, 551 A.2d 1220. The court ruled that the three-year limitation period of § 52–577 was the appropriate limitation period for common law fraudulent conveyance actions. *Id.* at 441, 551 A.2d 1220. The court noted that the plaintiff's "action is a common law action and therefore does not implicate § 52–552," and that "the three year

limitation period of § 52–577 applies to all actions based on a tort unless there has been a specific statutory exclusion." *Id.* The court concluded that a common law action to set aside a fraudulent conveyance of real property was grounded in tort. *Id.*

■ This court believes, based on the *Travelers* opinion, that Connecticut courts would apply the three-year limitation period of § 52–577 to a fraudulent conveyance action brought by a creditor (not holding an unliquidated tort claim)[6] under repealed § 52–552 in light of the *Travelers* holding that "the three year limitation period of § 52–577 applies to all actions based on a tort unless there has been a specific statutory exclusion." 209 Conn. at 441, 551 A.2d 1220. No such statutory exclusion existed for actions under § 52–552. Connecticut courts would likely also apply the general rule that the three-year period begins running as of the date that the creditor may be charged with knowledge of the conveyance. *See Travelers,* 209 Conn. at 443–44, 551 A.2d 1220 (citing with approval cases holding that limitation periods for fraudulent conveyance actions begin running when creditor has knowledge of conveyance, and noting that the "trial court properly considered the plaintiff's knowledge of the fraudulent conveyance in determining that the statute of limitations barred its action"). *Cf. also* Conn.Gen.Stat. § 52–552j (statute of limitations for UFTA claims creating an alternative one-year limitation period that begins to run only when the transfer "was or could reasonably have been discovered by the claimant"). Because the defendant, in arguing for the three-year limitation period, does not address the issue of when a creditor on whose behalf the trustee is suing would have had knowledge of the transfer, its motion to dismiss Count I must be denied.

**B.**

■ In Count II the trustee asserts a claim based upon an avoidance power which

---

5. Section 52–577 provides:
> No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of.
> Conn.Gen.Stat. § 52–577.

6. *See Murphy v. Dantowitz,* 142 Conn. 320, 114 A.2d 194 (1955) (holding that an unliquidated tort claimant is not a creditor within the meaning of § 52–552).

510

the Federal Deposit Insurance Corporation (FDIC), as receiver for several banks that extended credit to the debtors, holds under 12 U.S.C. § 1821(d)(17). The defendant argues that the trustee lacks standing to assert such a claim. Section 1821(d)(17) provides, in pertinent part:

*(A) In general*

The [FDIC], as conservator or receiver for any insured depository institution, and any conservator appointed by the Comptroller of the Currency or the Director of the Office of Thrift Supervision may avoid a transfer of any interest of an institution-affiliated party, or any person who the [FDIC] or conservator determines is a debtor of the institution, in property, or any obligation incurred by such party or person, that was made within 5 years of the date on which the [FDIC] or conservator was appointed conservator or receiver if such party or person voluntarily or involuntarily made such transfer or incurred such liability with the intent to hinder, delay, or defraud the insured depository institution, the [FDIC] or other conservator, or any other appropriate Federal banking agency.

*(B) Right of recovery*

To the extent a transfer is avoided under subparagraph (A), the [FDIC] or any conservator described in such paragraph may recover, for the benefit of the insured depository institution, the property transferred, or, if a court so orders, the value of such property (at the time of such transfer) from—

(i) the initial transferee of such transfer or the institution-affiliated party or person for whose benefit such transfer was made; or

(ii) any immediate or mediate transferee of any such initial transferee.

. . . .

*(D) Rights under this paragraph*

The rights under this paragraph of the [FDIC] or any conservator described in subparagraph (A) shall be superior to any rights of a trustee or any other party

(other than any party which is a Federal agency) under Title 11.

12 U.S.C. § 1821(d)(17).

■■■ The defendant argues that the trustee may not use § 1821(d)(17) as the basis for his § 544(b) avoidance powers. Under § 544(b) a trustee has the right to bring an avoidance action that one or more unsecured creditors of the debtors are entitled to bring under applicable law. *See, e.g., Wieboldt Stores, Inc. v. Schottenstein,* 94 B.R. 488, 506 (N.D.Ill.1988) ("Under [§ 544(b) ], a trustee may avoid transfers that are avoidable under state law if there is at least one creditor at the time who has standing under state law to challenge the transfer."). Applicable law may be either federal or state nonbankruptcy law. *See, e.g., In re Graven,* 936 F.2d 378, 383 n. 7 (8th Cir.1991) ("Subsection 544(b) grants the trustee the power to avoid certain transfers of the debtor to the extent that a creditor with an allowable claim might avoid them under applicable state or federal law."); *cf. also Patterson v. Shumate,* — U.S. ——, ——, 112 S.Ct. 2242, 2246, 119 L.Ed.2d 519 (1992) (holding that "applicable nonbankruptcy law" in Code § 541(c)(2) means both state and federal law).

The trustee makes what he calls a "plain meaning" argument in contending that he is empowered to use § 1821(d)(17) to avoid transfers by the debtor. The trustee argues that "[t]o assert a cause of action pursuant to [§ 544(b) ], the Trustee need only show that a single creditor exists who has an allowable claim who could void a transfer of property by the Debtor." Trustee's Brief at 23. The trustee contends that the FDIC is an unsecured creditor of the debtors, and that applicable law—in this case a federal nonbankruptcy statute—permits the FDIC to void certain transfers of the debtor. The trustee concludes that he may stand in the shoes of the FDIC and bring this cause of action.

■■■ The trustee ignores an important limitation on his avoidance powers. A trustee has standing to assert causes of action under § 544(b) only if the benefits of the action inure to all creditors ratably. This limitation is not apparent from the language of § 544(b) itself, but is nevertheless a settled bankruptcy doctrine, not modified by the en-

actment of the Bankruptcy Code of 1978, as amended.

The Supreme Court, in *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972), decided that a bankruptcy trustee lacks standing to bring causes of action on behalf of certain unsecured creditors when the damages recoverable under the action would be distributed only to the specific group of creditors on whose behalf the trustee was asserting the action. Even though other creditors might indirectly benefit from the action because any damages would correspondingly reduce the amount of claims against the debtor's property and thereby increase the dividend paid on claims, the Court held that a bankruptcy trustee may not bring a cause of action if the damages flowed to specific creditors rather than all creditors as a group.

The *Caplin* rule has not been modified by the Bankruptcy Code. The original House version of § 544 included a subsection that was intended to overrule *Caplin*, but that subsection was deleted in the final version of the bill passed by Congress. Under proposed § 544(c), a trustee would have had authority to bring actions on behalf of specific creditor subgroups if the action would reduce the amount of claims against the estate. Every circuit considering what meaning to give to the deletion of proposed § 544(c) from the final version of the act has concluded that Congress intended not to upset the rule announced in *Caplin*. *See E.F. Hutton & Co. v. Hadley*, 901 F.2d 979, 986–87 (11th Cir.1990) (holding that trustee had no standing to bring claims of specific creditors where the "causes of action and any potential recovery belong to the [specific] creditors") ("In rewriting the bankruptcy laws in 1978, Congress considered and rejected a provision that expressly would have overruled *Caplin*."); *DSQ Property Co. v. DeLorean*, 891 F.2d 128, 130–31 (6th Cir. 1989) (same); *Williams v. California 1st Bank*, 859 F.2d 664, 666 (9th Cir.1988) (same); *Koch Refining v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1347–49 & 1348 n. 11 (7th Cir.1987), *cert. denied*, 485 U.S. 906, 108 S.Ct. 1077, 99 L.Ed.2d 237 (1988) (same); *In re Ozark Restaurant*

*Equip. Co.*, 816 F.2d 1222, 1227 (8th Cir.), *cert. denied sub nom., Jacoway v. Anderson*, 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987) (same). *Cf. also St. Paul Fire & Marine Ins. Co. v. Pepsico, Inc.*, 884 F.2d 688 (2d Cir.1989).

The Seventh Circuit recently summarized the extent of a trustee's powers under § 544:

[A trustee] has creditor status under section 544 to bring suits for the benefit of the estate and ultimately of the creditors.

However, the trustee has no standing to bring *personal* claims of creditors. A cause of action is "personal" if the claimant himself is harmed and no other claimant or creditor has an interest in the cause. But allegations that could be asserted by any creditor could be brought by the trustee as a representative of all creditor....

.... [A trustee's] right to bring a claim "depends on whether the action vests in the trustee as an assignee for the benefit of creditors or, on the other hand, accrues to *specific* creditors."

*Koch Refining*, 831 F.2d at 1348–49 (quoting *Cissell v. American Home Assurance Co.*, 521 F.2d 790, 793 (6th Cir.1975), *cert. denied*, 423 U.S. 1074, 96 S.Ct. 857, 47 L.Ed.2d 83 (1976)). Under this analysis, the fraudulent transfer action of § 1821(d)(17) must be characterized as a personal claim accruing only to the FDIC. The language of the statute indicates that only the FDIC, as conservator of a failed depository institution, may use the statute to avoid certain fraudulent transfers. *See In re Colonial Realty Co.*, 980 F.2d 125, 130 (2d Cir.1992) ("The exclusive nature of the § 1821(d)(17) cause of action ... springs directly from the status of the FDIC as receiver of the failed banks and is expressly granted to the FDIC by that statute."). This reading of the plain language of the statute is confirmed by the legislative history as well. According to the legislative history, amendments to § 1821(d) were made to

provide the [FDIC] with specific authority to avoid fraudulent transfers of assets by institution-affiliated parties and debtors of an institution within five years of the date that the [FDIC] is appointed conservator or receiver. [Section 1821(d)(17)(B) ] es-

tablishes the rights of the [FDIC] to recover *for the benefit of the insured depository institution* the property transferred, or if a court orders, the value of the property at the time of transfer.... [Section 1821(d)(17)(D) ] gives the [FDIC] superior rights to the trustee or any other party (other than a Federal agency) in bankruptcy with respect to the property transferred.

H.R.Rep. 681(I), 101st Cong., 1st Sess. 181 (1990) U.S.Code Cong. & Admin.News pp. 6472, 6587. (emphasis added). While the trustee states in his brief that he is bringing this action under § 1821(d)(17) "for the benefit of the creditors of the consolidated estate," Trustee's Brief at 19, § 1821(d)(17)(D) and the legislative history quoted above make such a statement impossible.

### C.

The trustee has agreed to voluntarily discontinue the unjust enrichment cause of action in light of the defendant's motion to dismiss based on standing. Count III of the amended complaint, therefore, is dismissed.

### D.

The defendant's brief asserts that the defendant is a creditor of the debtors' estate. The motion to dismiss Count IV is denied.

### IV.

### *CONCLUSION*

For the reasons expressed, the defendant's motion to dismiss is partially granted. Counts II and III of the amended complaint are dismissed. It is

SO ORDERED.